[Civ. No. 1619.   Third Appellate District.—August 1, 1917.]

## L. G. SCOTT, Appellant, v. C. W. WOODWORTH et al., Respondents.

DEED—INSUFFICIENT DESCRIPTION OF PROPERTY.—A written instrument affecting real property is without force either as a deed or mortgage where the property is described as "bounded on the north and east by the lands of Robinson and Bodega Avenue of the town of Sebastopol, on the east by the land of McChristian, and on the south by Calder Avenue extended, and containing five and one-half acres," without giving any westerly boundary, and without showing what particular lands or portions of lands of the different owners constituted the easterly boundary.

ID.—RULE AS TO DESCRIPTION—STATUTE OF FRAUDS.—To be valid on its face, a deed must contain such a description of the real property thereby intended to be conveyed as will enable the property to be readily located by reference to the description, and where the description is so vague and uncertain that the property cannot be identified and located therefrom, and the writing itself does not furnish the means whereby the description may be made sufficiently definite and certain readily to locate the property, then the instrument must be

held void, since the imperfections of the description cannot be supplied through evidence extrinsic to the writing itself, in view of the rule that a conveyance of real property must be in writing.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

L. G. Scott, and T. J. Butts, for Appellant.

D. R. Gale, and J. R. Leppo, for Respondents.

HART, J.—It is agreed by counsel for the respective parties hereto that this is an action to quiet title.

The amended complaint alleges: "That on or about the third day of January, 1908, plaintiff's grantors, August A. Lueger, sometimes called A. Lueger, and Hedwig Voightlander, nee Lueger, were the owners in fee of all that certain lot, piece and parcel of land situated, lying and being in the township of Analy, county of Sonoma and state of California, and bounded and particularly described as follows, to wit:" There follows a description of certain land, to which reference will hereafter in this opinion be made. It is next alleged that on said third day of January the "property stood of record in the name of Ernest Lueger, and that on or about said date without the knowledge or consent of August A. Lueger or the said Hedwig Voightlander, nee Lueger, the said Ernest Lueger made, executed and delivered to one Chris Mugge a certain mortgage upon all of the aforesaid property, to secure the payment to the said Chris Mugge of the sum of two thousand dollars. That after the execution of the said mortgage to the said Chris Mugge as aforesaid, the said Ernest Lueger made, executed and delivered to the said August A. Lueger and Hedwig Voightlander, nee Lueger, a deed conveying all his right, title, interest and estate in and to said premises, which said deed was dated on the twenty-seventh day of June, 1911, and that the same was recorded on the first day of July, 1911, in Book O of Bonds and Agreements of said Sonoma County Records." It is then alleged that, on or about July 14, 1913, "the said premises were sold by virtue of an execution issued on a judgment of foreclosure of the aforesaid mortgage"; that de-

34 Cal. App.—26

fendant, C. W. Woodworth, and O. L. Murphy purchased said property for the sum of two thousand five hundred dollars, that thereafter said Woodworth acquired all the rights and title of said Murphy in and to said premises and holds the certificate of purchase, "which said certificate has not been satisfied and is undischarged, and the time for a redemption of said premises has not yet expired." It is alleged that, on or about February 14, 1914, the said August A. Lueger and Hedwig Voightlander tendered said Woodworth the sum of $2,685, and demanded of defendants "a proper and lawful satisfaction and discharge of said mortgage, and said certificate of sale of said premises"; that defendants refused to accept said money, and did not state "wherein there was a deficiency or error in the amount." A deed from August A. Lueger and Hedwig Voightlander to plaintiff, executed and delivered before the commencement of the action, is alleged, the rental value of the property is stated, and the prayer is that plaintiff be decreed the owner of said premises, for damages for the withholding of possession, etc.

In their answer, defendants deny that, on or about the third day of January, 1908, August A. Lueger and Hedwig Voightlander were the owners of said premises, but allege that, since December 22, 1906, and until July 18, 1913, Ernest Lueger was the owner and in possession thereof; deny the execution or delivery by Ernest Lueger to August A. Lueger and Hedwig Voightlander of "a deed, or any instrument in writing, conveying to them" the title of said Ernest Lueger to said land. "Defendants allege that on the eighteenth day of July, 1913, and while the said Ernest Lueger was so the owner and in the possession of the said lands and premises described in said amended complaint, he made, executed and delivered to defendant, C. W. Woodworth, and O. L. Murphy" a deed conveying all his interest in said land; "and thereupon the said O. L. Murphy and said defendant, C. W. Woodworth, entered into the possession of the same"; that, on July 21, 1913, said Murphy conveyed his interest to defendant Woodworth, who has since been in possession of the premises. "That prior to October 21, 1913, the said C. W. Woodworth and O. L. Murphy had no actual knowledge or notice, and had no constructive notice, of any grant, deed or conveyance by the said Ernest Lueger, or by any other person, to the said August Lueger and Hedwig Voightlander,

or to either of them, of the said lands and premises, or of any part thereof, or that the said August Lueger or Hedwig Voightlander, or either of them, claimed any title thereto." It is alleged that the time for redemption of said premises expired July 18, 1914, and that no redemption has been made. The tender and demand alleged in the complaint are denied and it is alleged that defendants, J. K. Smith, as sheriff, and J. K. Smith, make no claim to the premises.

The findings of the court practically follow the answer and the judgment was in favor of defendant, Woodworth, that, from the commencement of the action, he has been the owner in fee simple of said premises. From this judgment plaintiff appeals.

The general facts of the controversy, which are either admitted by the pleadings or established by uncontradicted evidence, are correctly stated as follows in the brief of the respondents:

"In November, 1906, Peter Christensen was the owner of the lands involved, and his title is the common source. In November, 1906, said Christensen and wife executed a deed in due form to said Ernest Lueger and one Zinkernagel. In December, 1906, said Zinkernagel conveyed all of his one-half interest in said lands to said Ernest Lueger. On January 3, 1908, said Ernest Lueger and wife executed to said Mugge the mortgage mentioned in plaintiff's amended complaint to secure a promissory note for two thousand dollars. This mortgage was later regularly foreclosed by action in the superior court of Sonoma County, in which the said August A. Lueger and Hedwig Voightlander were made parties defendant. They appeared in said action, pleading that certain moneys were owing by said Ernest Lueger to them under the instrument of June 27, 1911, and secured by the same, later withdrawing such pleadings and suffering default; and which foreclosure action went regularly to judgment and foreclosure sale, and resulted in a sale of the mortgaged premises to one Murphy and the defendant Woodworth, the latter later acquiring Murphy's interest in the certificate of sale. On July 18, 1913, being four days after the foreclosure sale, the said Ernest Lueger conveyed the said lands to the said purchasers at the said foreclosure sale, O. L. Murphy and C. W. Woodworth, by regular grant, bargain and sale deed. On July 21, 1913, said O. L. Murphy

duly conveyed his one-half interest in said lands to his co-tenant, the defendant Woodworth.''

The written instrument, which is the foundation of the plaintiff's case, as made by his amended complaint, and which, as seen, he characterizes in his said complaint as a ''deed,'' reads as follows:

''THIS INDENTURE, made and entered into this 27th day of June, 1911, by and between Ernest Lueger, of Sebastopol, Sonoma County, California, party of the first part and A. Lueger and Hedwig Voightlander, nee Lueger, parties of the second part,

''Witnesseth; That whereas said first party has heretofore acted as trustee for certain funds belonging to second parties the exact amount of which is unknown by second parties and they rely upon the statements of first party at this time that the same is and were a certain amount 2800 Marks German money, and this agreement is made upon said basis as a settlement, of said amount coming into the hands of first party two thirds of which belongs to second parties herein, and whereas said first party has an equity in and to 5½ acres of land in and near Sebastopol, California, of the value of about $4000.00 on which first party has a mortgage of about $2000.00, now in consideration of the premises and money in the hands of first party, not counting money now in Germany but all being a part of the estate of Louise Ohel, deceased, in settlement of demands of money had and received by first party to which there has been no accounting to second parties, first party does hereby sell and convey unto said second parties The equitable interest in and to said hereinafter described land figured at a valuation of $2000.00 if on the other hand said property shall sell for more than that amount it shall be and belong to first party, and first party shall have the right to sell said premises and pay to second parties $2000.00 cash money in lieu of their interest, First party agrees that he will proceed to sell said premises as soon as possible for a reasonable market price meanwhile he shall have possession thereof and the income therefrom without further consideration, and the said $2000.00 when procured to be paid to second parties shall be placed in the First National Bank of Sebastopol to the credit of Second parties, but in case of a sale by first party it shall be by the

consent of second parties, said money and property to be controlled by the provisions of the will of said Louise Ohel, and this settlement shall be in lieu of all demands that have been transferred to America in said estate upon the representation of said first party, the land herein conveyed is described as follows, being all of that lot piece or parcel of land situated being and lying in the township of Anly, county of Sonoma, and State of California, and bounded and described as follows to wit,:

"Bounded on the North and East by the lands of Robinson and Bodega Avenue of the town of Sebastopol, on the East by the land of Jimmy McChristian and on the South by Calder Avenue extended, and containing 5½ acres.

"That it is further agreed and understood that when said land shall have been sold that if the same can be loaned at interest that first party shall be entitled to the same interest that the same was drawing in Germany, and that second parties shall have the remainder of their interest payable to them as it may accrue.

"Witness our hands and seals the 30th day of June 1911.

"ERNEST LUEGER.
"HEDWIG VOIGHTLANDER, nee LUEGER.
"AUGUST E. LUEGER."

Attached to said instrument is a certificate of acknowledgment by the parties thereto.

The alleged offer by August A. Lueger and Hedwig Voightlander to redeem from the foreclosure sale, dated February 14, 1914, together with the affidavit of the service of the same on the defendant, Woodworth, were put in evidence, and a deed executed by said August A. Lueger and Hedwig Voightlander and delivered to the plaintiff, purporting to convey to the latter the premises described in the amended complaint were also offered and received in evidence.

The position of the plaintiff is that, by virtue of the writing or "deed," which is the basis of this action, August A. Lueger and Hedwig Voightlander became the successors in interest to the title of Ernest Lueger, and that, therefore, they were entitled to redeem from the foreclosure sale, and that, furthermore, they did in fact redeem; that, by reason of said transaction and of the conveyance by them of March 6, 1914, to the plaintiff, the latter became the owner of the legal title,

and is, therefore, entitled to a judgment quieting the same in this action.

On the other hand, the defendants contended at the trial, as they contend here (and the trial court held), that the said instrument is not a deed or other conveyance of real property, and that it was never intended to operate as a deed of conveyance. It is further contended that said instrument, whatever its legal character or the purpose for which it was intended, is void for the reason that it does not contain a description of the premises which constitute the subject matter thereof. It is also contended that there was no redemption or even offer to redeem.

Before proceeding to a consideration of the several contentions above mentioned, it may be remarked that the elaborate discussion in the brief of the appellant of the rights of trustees and beneficiaries, fraudulent transfers and conspiracies, and other like questions, is wholly foreign to any issue made by the pleadings. The complaint nowhere alleges that either the mortgage by the elder Lueger to Mugge or the transfer of the legal title of the mortgaged premises to Murphy and Woodworth, the purchasers at the foreclosure sale, involved a fraudulent transaction, or that either of those transactions was the result of a fraudulent conspiracy upon the part of the parties thereto wrongfully to deprive August A. Lueger and Voightlander of any rights which they might have claimed in said premises.

The agreement upon which this action is founded, whatever may be its legal effect, is by no means in the form of a deed of conveyance and does not appear, from its language or provisions, to have been intended as such.

In the first place, it is to be noticed that it is signed by the second parties as well as by the first party. A deed is required to be signed by the grantor only, and the fact that all the parties signed it and that it was designated in the instrument as an "agreement" by the parties themselves, is clearly indicative of an intention in them that it should be something other than a deed. Moreover, the instrument was not recorded in the book containing the record of deeds in the recorder's office, but was inserted in a book kept in said office for the recordation of bonds and mortgages. This is another strong circumstance indicating that the parties did

not intend that it should or understand that it could operate
as a deed. Furthermore, the agreement sets forth that the
first party is "trustee for certain funds belonging to the sec-
ond parties," amounting to two thousand eight hundred
marks, a mark, as a monetary unit used in Germany, being
approximately twenty-three and eight-tenths cents of our
money, or approximately $700, and further declares that
"this agreement is made upon said basis as a settlement of
said amount coming into the hands of said first party, two-
thirds of which belong to said second parties herein." Mani-
festly, two-thirds of $700 amounts to $466, which is the sum
for which the first party agreed to transfer to the second
parties an equity of the value, according to said agreement,
of two thousand dollars. That a person would part with an
interest in property of the value of two thousand dollars for
the small sum of $466, is hardly in consonance with reason
or the probable intention of the owner or the understand-
ing of the other contracting parties. But a circumstance
indicating that the instrument was not intended to operate
as a deed of conveyance stronger than any which has yet
been suggested is to be found in the provisions of the instru-
ment that said first party "shall have the right to sell said
premises," and that if such sale be for more than the sum
of two thousand dollars, the excess may be retained by said
first party; that said "first party agrees that he will proceed
to sell said premises as soon as possible for a reasonable
market price; meanwhile he shall have possession thereof and
the income therefrom without further consideration," etc.
As is well said by counsel for the respondents, the right to
sell the property and to retain the proceeds of sale, or any
part thereof, constitute acts which are entirely inconsistent
with the parting of title or an intention to vest title to the
property by the owner thereof in others. Obviously, "an
instrument which confers no right of either present or future
possession, possesses little of the character of a conveyance,
and can hardly be deemed to pass any estate in the land."
(McMillan v. Richards, 9 Cal. 365, 410, [70 Am. Dec. 655];
Fogarty v. Sawyer, 17 Cal. 589.)

What the instrument or the effect thereof was intended by
the parties to be, it is, indeed, difficult to conjecture from
the provisions themselves of the writing. In fact, the author

of the instrument, the plaintiff himself, seems to have been much puzzled as to how to classify it; for, as attorney for the parties of the second part, he prepared, verified, and filed in the action to foreclose the Mugge mortgage an answer in which he referred to the instrument as a writing whose purpose was to secure to his then clients, but present assignors, the payment of the money claimed to be due them from the first party to the agreement, and prayed the court so to construe the instrument and enter a decree accordingly, and thus safeguard the interests of August A. Lueger and Hedwig Voightlander, alleged to be so secured.

But, whatever may be the legal effect of the instrument, or whether it purports or was intended to be either a deed or a mortgage, it is clear that it is without force as either, because the property which constitutes the subject matter, thereof is not so described as to facilitate an identification of the particular land or premises to which it relates. It will be noted that the land as it is described in the instrument is not given a westerly boundary, and, so far as the instrument shows to the contrary, there is no limit to the extension of the tract westerly. Again, as so described, the tract is bounded on the north and *east* by the lands of "Robinson and Bodega Avenue," and "on the *east* by the land of McChristian." Thus, it will be observed, the description is indefinite and uncertain. While it is not inconceivable that the tract might be bounded on one side by two different and distinct parcels of land—that is, by lands owned by different parties—or bounded on the north and partly on the east by the lands of one individual, still in such case the description must necessarily be indefinite and uncertain where it does not show what particular lands or portions of the lands, respectively, of the two different owners constitute together the easterly boundary line of the tract sought thus to be described. But the omission to describe the westerly boundary line is itself sufficient to vitiate the deed or mortgage, if it be either, since, as is true here, the land is not designated by any particular name or described by reference to some particular object or thing which might itself lead to a ready identification of the particular tract which constitutes the subject matter of the instrument. And, as showing to some extent the undependableness of the description of the land as

given in said instrument, it may be pointed out that in the amended complaint the tract is described as being "bounded on the north and *west* by the lands of Robinson and Bodega Avenue," which is, obviously, inconsistent with the description given in the instrument.

To be valid on its face, a deed must contain such a description of the real property thereby intended to be conveyed as will enable the property to be readily located by reference to the description. It is true that the description by boundaries may be ambiguous or indefinite and still the deed sufficient if it otherwise provides means whereby the description can be made certain and the land identified and located. Where, however, the description is so vague or uncertain that the property cannot be identified and located therefrom, and the writing itself does not furnish the means whereby the description may be made sufficiently definite and certain readily to locate the property, then the instrument must be held void, since the imperfections of the description cannot be supplied through evidence extrinsic to the writing itself without running up against the positive mandate of the rule that a conveyance of real property must be in writing.

The propositions above stated are quite elementary and need the citation of no authorities to confirm them; still we cite the following authorities as embodying a clear elucidation of the principles involved therein: *Brandon* v. *Leddy,* 67 Cal. 43, [7 Pac. 33]; *Best* v. *Wohlford,* 144 Cal. 737, [78 Pac. 293]; *Donnelly* v. *Tregaskis,* 154 Cal. 261, [97 Pac. 421]; *People* v. *Klumpke,* 41 Cal. 263; *Moss* v. *Shearer,* 30 Cal. 467, 468; *Barker* v. *Southern R. W. Co.,* 125 N. C. 596, [74 Am. St. Rep. 658, 660, 34 S. E. 701]; 2 Devlin on Deeds, sec. 1910; 13 Cyc. 543.

Referring now to the evidence relative to the description of the property, it is to be observed that thereby it is shown that the instrument relied upon here by the plaintiff is not only void upon its face because of the vagueness and uncertainty of the description, but that in point of fact the description of the property as it is set out therein is erroneous. From the official map of the town of Sebastopol, which was received in evidence, and the testimony of the city surveyor and engineer and the city attorney of said town, it appears as undisputed facts that there is a "Calder Avenue" in the town of Sebastopol and a "Calder Addition" to said town;

that Calder Avenue does not anywhere constitute a boundary line of the premises in question, but that the property is bounded on the east by Calder's Addition to said town and west by the lands of McChristian; that it is bounded on the north by a part of Bodega Avenue and by the lands of McChristian and that the lands of Robinson bound it on the west and not on the north and east, as set forth in the agreement which constitutes the basis of this action.

Enough of the testimony as to the correct description of the property has now been adverted to to show and emphasize the proposition that the description of the property as given in the instrument or agreement by virtue of which plaintiff claims to have acquired an interest in the property in question is not only so ambiguous and uncertain as to make it impossible to locate therefrom the property it purports to refer to, but that the description so given is at variance in almost every essential particular with the true description of the premises.

It results (assuming it to be or to have been intended as a deed) that the said instrument is wholly inoperative as a deed of conveyance of real property, and, since the plaintiff's asserted title is entirely founded on said writing, and, inasmuch as in an action to quiet title, the plaintiff is required to show title in himself before he will be entitled to the relief sought in such an action, the trial court was left to no other alternative but to enter judgment against him.

It is not claimed in the complaint that the instrument is or was intended to operate as a mortgage, and we think it could not properly be given a construction imparting to it the characteristics and the effect of a mortgage. And if it were a mortgage, the remedy of the plaintiff would not be in an action to quiet title, but in one to foreclose it and sell the property thereunder (Code Civ. Proc., sec. 726), in which case only, if at all, could he obtain possession of the property. (Code Civ. Proc., sec. 744.) But, as stated, even as a mortgage, the instrument would still be inoperative because of the infirmities which impart invalidity to it as a deed.

The above considerations are decisive of the case as it is presented here, hence we need not consider the question raised by the defendants, whether the purported offer of the plaintiff's assignors to redeem the property constituted a legal offer—that is to say, whether the offer or tender as made was

in compliance with the requisites essential to the extinguishment of an obligation by offer of performance.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1917.