[Civ. No. 4133. Third Appellate District.—August 2, 1930.]

GERMO MANUFACTURING COMPANY OF MISSOURI (a Corporation), Appellant, v. U. S. McCLELLAN et al., Respondents.

Frank G. Tyrrell and John T. Gose for Appellant.

A. S. De Santis for Respondents.

LUTTRELL, J., *pro tem.*—Plaintiff, a Missouri corporation, brought this action to enjoin defendants, who are rivals in business, from using, in the manufacture and sale of

disinfectants, antiseptic and sanitary compounds, certain formulae, names, labels and other properties which plaintiff claimed to own and to have acquired for its own private and confidential use at great cost of labor and research during its business career in the manufacture and sale of chemicals, covering a period of upwards of twenty years. In addition to praying for an injunction against defendants, plaintiff asks for a recovery of all copies of formulae and names and addresses of customers, as well as all other documents and property claimed by it and, at the time of the commencement of the action, in the possession of defendants. Damages and an accounting are also sought.

Plaintiff charges that these secret and private formulae, receipts, labels and other documents and information came into the possession of the individual defendants above named in a confidential manner while they were in its employ and particularly while defendant U. S. McClellan was the manager of its branch business located in Los Angeles. It is charged that he, while acting as such trusted employee, with a view of disrupting its said branch business and of setting up a rival business of his own and that of his associates, the other defendants herein, and using in their said business plaintiff's said secret formulae, receipts, labels and other like properties, induced the other personal defendants herein, who were likewise employees of plaintiff, and who likewise had been entrusted with plaintiff's secret formulae and receipts and other properties while in its employ, to sever their connection with plaintiff, as such employees, and to join with him in forming the corporation known as C. U. McClellan & Co., defendants herein, and establishing and carrying on in Los Angeles, in the name of said corporation, a business in competition with that of plaintiff; that in keeping with such purpose, said C. U. McClellan & Co. was organized and did engage in such competitive business in said city, using all of said formulae, receipts, labels and other like properties belonging to plaintiff, to its great damage, irreparable loss and injury.

Defendants answered plaintiff's complaint, denying generally the material allegations thereof, and claiming in particular that the said formulae, receipts, labels and other claimed secret properties of plaintiff were not in fact secret,

but that same were matters of common public knowledge and that plaintiff had no private property rights in same. Defendants further averred that long prior to defendant U. S. McClellan's entering plaintiff's employ as manager of its said western branch, he had been an experienced chemist and, as such, had acquired full knowledge of all of what plaintiff claims is its secret and private formulae, receipts and like properties.

Shortly before said action was to be tried defendants were permitted by the trial court, over the objection of plaintiff, to file an amended answer, wherein denial was made of plaintiff's right, as a foreign corporation, to transact business in this state or to be heard in court, no denial of these claims of plaintiff having been made in the original answer. Otherwise said amended answer followed generally the denials and allegations of such original pleading, except that in addition to denying generally the claims of plaintiff, as set forth in its complaint, said amended answer set up, as a separate and distinct defense, the claim that plaintiff, in entering upon its business career in what may, for convenience, be termed its western field, embracing all territory in the United States, Canada and Mexico lying west of the 105th degree of longitude, entered into an agreement with a corporation in California bearing the name of Germo Manufacturing Company of California, which company was at the time of such agreement composed largely of the individuals composing plaintiff corporation, and which California Company was engaged in the manufacture and sale in said western field of the same, or similar, products as were being manufactured and sold in the eastern field or territory lying east of the 105th degree of longitude by plaintiff, by the terms of which agreement plaintiff acquired from said Germo Manufacturing Company of California the exclusive right to operate its said business in said western field; that in entering into such agreement plaintiff did so with the fraudulent intent and purpose of acquiring the business, property and territory of said California company and that through fraud and illegal practices and through violation of the terms of such agreement plaintiff ultimately forced said latter company into bankruptcy and acquired

its property and business. A copy of such agreement is appended to defendants' amended answer as an exhibit.

Defendants further, in their amended answer, as separate defense, allege that plaintiff was and is engaged in unfair competition with and is infringing upon the business, trade name, trademark and patent process of a certain corporation operating in Los Angeles under the name of No More Products Company. The charge is also made that plaintiff is and has been following a system of discriminating against public institutions, such as states, cities and counties, in the sale of its products, through a system of giving premiums to the heads of departments of such institutions as an inducement to secure orders for the sale of its products at a higher figure than that charged to the general public in the ordinary course of trade.

Upon the issues thus raised by the pleadings the case went to trial in the court below and after several days spent in the taking of testimony and before plaintiff had finished with the introduction of its evidence in chief, the learned trial judge, of his own motion and over the strenuous objection of counsel for plaintiff, dismissed the action and entered a judgment of dismissal of the action upon the ground, as stated, that it appeared to the court that the parties to the action were equal participants in fraud and were *in pari delicto*. Neither party was awarded costs.

In due time plaintiff moved for a new trial, which motion was denied. This appeal was then taken from the judgment of dismissal and has come up on a bill of exceptions.

Appellant bases its appeal upon several grounds, the principal of which are: Error of the trial court in granting defendants' motion to file their amended answer; errors committed in overruling its objections to certain interrogatories propounded to its witnesses by counsel for defendants on cross-examination, particularly in reference to matters set up as separate defense in their amended answer; in denying its motion to strike out certain evidence pertaining to such matters; in permitting the introduction of certain evidence on the same subject matter, hereinafter noted; in denying its motion for an order requiring defendants to return to it certain documents and files which it claimed had been pilfered by them, and most important of all, in dis-

missing the case on the ground that the parties litigant were equally guilty in the perpetration of a fraud.

Respondents in meeting these claims of appellant assert that the action having been dismissed by the trial court *sua sponte,* the presumption is that it was done on good grounds and in conformity with the rules of law; that it was the duty of the court, *sua sponte,* to refuse to entertain the action when its illegality appeared from the proof; that appellant, not having included in its bill of exceptions everything necessary to show that the action of the trial court was erroneous, it will be presumed that such matters were present; that all of the rulings assigned as errors rested within the discretion of the trial court, and unless the contrary is made to appear, the trial court properly exercised its discretion; that the complaint in the action fails to state a cause of action and, therefore, the dismissal was proper; that the agreement made in December, 1923, between the plaintiff and the Germo Manufacturing Company of California is null and void and therefore could not be made the basis of an injunction suit; that the alleged processes or formulae set forth in the complaint are not in fact a secret; that appellant was guilty of untruth and bad faith in the conduct of its business and was in court with unclean hands and therefore was not entitled to any relief; that as soon as the court below discovered that the parties were *in pari delicto,* the law imposed a duty upon the court to dismiss the action; and lastly that the appellant seeks equity but has not done equity, hence is not entitled to any consideration.

While perhaps not necessary to a proper disposition of the appeal in this action, it has seemed advisable to thus, at the outset, set forth at length the different issues raised by the pleadings in the case and also the various claims of the respective parties in this court, as shown by the record, in order that a better understanding may be had of the conclusions reached, as hereinafter set forth.

A brief review of the evidence in the case pertaining to the points in issue on this appeal, as disclosed by the bill of exceptions, will also assist in this understanding.

It was stipulated at the trial that plaintiff's business consists of the compounding, manufacturing and selling of dis-

infectants, insecticides and poultry remedies; that in 1909 the Germo Manufacturing Company of California, a California corporation, was formed, with the agreement with the plaintiff to make and sell the same products, with exclusive rights to operate in the territory west of the 105th meridian of longitude in the United States, Canada and Mexico; that the two companies operated separately until January 1, 1924, when they entered into a contract whereby plaintiff agreed to operate the business in the designated territory for two-thirds of the net profits. On July 7, 1926, defendant C. U. McClellan & Co. rented the premises at 624 East Sixty-first Street, Los Angeles, and now occupies the same as its place of business, which is the compounding and selling of disinfectants, insecticides and poultry remedies.

Evidence was adduced by plaintiff showing that on August 27, 1926, defendant U. S. McClellan was supplanted as manager of its western branch of business by another man, said McClellan having before that date in conjunction with his son, defendant C. U. McClellan, started the rival business in Los Angeles; that said C. U. McClellan resigned from plaintiff's employ, effective September 1, 1926; that Perry Watts, plaintiff's chemist; David Blevins, his assistant; Juanita Baxter, plaintiff's bookkeeper; and Albert Dille, its city salesman, all of whom are also defendants herein, left plaintiff's employ and entered the employ of the rival concern, C. U. McClellan & Co., about said month of September.

Plaintiff, calling defendant U. S. McClellan, its former manager, as an adverse party under section 2055 of the Code of Civil Procedure, introduced a long list of identical articles being manufactured and sold by defendant C. U. McClellan & Co. as those manufactured and sold by plaintiff. On cross-examination of this witness, defendants were permitted to introduce and have read into the record, over the objection of plaintiff, certain portions of what purported to be a report of the division of chemistry of California, working under instructions from the director of the department of agriculture of the state in the administration of the California Economic Poison Act of 1921 (Stats. 1921, p. 1259), wherein it was shown that certain of plaintiff's manufactured products which had been sold in the course

of trade to a customer in California had been mislabeled by it. In the discussion which arose between court and counsel over the admissibility of this evidence, defendants' counsel stated, in response to a question put by the court, that he was attempting to prove that the label on plaintiff's said product was false and untrue and that by reason thereof plaintiff was not entitled to an injunction. Upon eliciting this information from counsel, the court overruled plaintiff's objection to the evidence, as well as to considerable other evidence of a similar character, brought out by defendants on cross-examination of the witness.

Defendants, out of order, called as their witness one Louis J. Somers, a deputy clerk of the United States District Court of the Southern District of California, and through him were permitted to introduce, over plaintiff's objection, an information and the judgment-rolls in two certain criminal actions in such court wherein the United States had prosecuted and convicted plaintiff for mislabeling some of its manufactured products.

Defendants, over plaintiff's objection, were permitted to elicit testimony from defendant Juanita M. Baxter, whom plaintiff had called as an adverse party under the code, showing that plaintiff had, in the course of its business, given premiums or cash rebates to the heads of departments of public institutions, such as states, cities and counties, in the procuring of orders for the sale of its products and had, under such system, charged a higher price to public departments and institutions than to the general public. After this last-mentioned evidence was admitted, over plaintiff's objection on the ground of its irrelevancy and immateriality and that it was outside the issues, plaintiff moved to strike same from the record for the reason that defendant U. S. McClellan had wilfully and guiltily participated in any and all of these transactions of which complaint is made, and is, therefore, estopped from introducing any such testimony. This motion was denied.

While H. A. Brereton, president of plaintiff company, was testifying as a witness for plaintiff, defendants were permitted to introduce in evidence, over plaintiff's objection, a certain telegram sent by defendant U. S. McClellan from Los Angeles to Brereton, as such president, at St.

Louis, on May 24, 1926, containing the information, among other things, that the chlorine case had come up in court that day and that a fine of $250 on each of three counts had been imposed upon plaintiff.

All of this line of evidence was introduced by defendants, as stated by their counsel in the offer thereof, to prove that plaintiff had come into court with unclean hands and, therefore, was entitled to no relief.

It is apparent from the foregoing brief recital of the evidence and proceedings in the introduction thereof that the learned trial judge was vitally influenced by and, in fact, based his judgment of dismissal of the action upon this evidence which defendants were permitted, over the objection of plaintiff, to get into the record, tending to show that plaintiff had at times, in the course of its business, been guilty of certain acts of unfair dealing, such as mislabeling and securing business by the giving of premiums, as aforesaid, and that it had, as a consequence thereof, been the subject of investigation by the department of agriculture of this state and had been before the federal court in criminal proceedings.

As heretofore noted, counsel for appellant contends that all of the matter set forth in the amended answer of respondents, under the head of separate defense, is irrelevant, immaterial and without the issues of the case and that all of the evidence which was permitted to be introduced at the trial in support of the separate defense was likewise outside the issues, irrelevant and immaterial and should have been excluded. We are of the opinion that these contentions of the appellant must be sustained.

In passing, we might say that, while plaintiff was within its legal rights in permitting the case to come to trial, without attacking defendants' amended answer by a motion to strike the allegations contained in the separate defense, choosing rather to await the trial and object to the introduction of evidence in support thereof, when same was offered, we deem it better practice to have such questions raised in the settlement of the pleadings, thereby affording the trial judge more time and better opportunity to determine the same than is usually afforded during the progress of a trial. In the case at bar, it is true that objection

was made to the filing of the amended answer, but inasmuch as the issue of plaintiff's right to do business in California and to a standing in court was raised in the amended answer and had not been raised in the original answer, the court, in the exercise of its discretion, properly permitted the filing of such amended answer.

The one important question presented in this appeal, the solution of which is in our opinion determinative of the case, is the question of the admissibility of this evidence, tending to show acts of misconduct on the part of plaintiff in the course of its business. The question at once presents itself as to whether or not by allowing defendants to introduce this line of evidence they were permitted to interpose the defense of "unclean hands" by showing acts of misconduct on the part of plaintiff entirely unconnected with the matter being litigated.

If the allegations of appellant's complaint are true, there can be no doubt about the action being a proper one for equitable relief. Injunction is a proper remedy to enjoin those who, having as former trusted employees gained confidential information from the employer, seek to use such information for their own private gain in competing with the employer's business, or in behalf of a rival concern. (*Empire Steam Laundry* v. *Lozier*, 165 Cal. 95 [Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159, 130 Pac. 1180]; *Cornish* v. *Dickey*, 172 Cal. 120 [155 Pac. 629]; *New Method Laundry Co.* v. *MacCann*, 174 Cal. 26 [Ann. Cas. 1918C, 1022, 161 Pac. 990].)

 But, considering again the real and vital issue involved in this appeal—that of the defense of "unclean hands"—we think that to constitute such a defense the inequitable conduct charged must pertain to the very subject matter involved in the action before the court and must affect the equitable relations between the parties litigant; otherwise it is wholly irrelevant and has no place in the trial.

In Pomeroy's Equity Jurisprudence, volume 1, section 399, on page 741, the principle involved is set forth in the following plain and explicit language:

"Broad as the principle is in its operation, it must still be taken with reasonable limitations; it does not apply to

every unconscientious act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands.''

Our own Supreme Court in the case of *Bradley Co.* v. *Bradley*, 165 Cal. 237 [131 Pac. 750, 752], in considering the equitable maxim that he who comes into equity must come with clean hands, uses this very significant language:

''It is not every wrongful act, nor even every fraud, which prevents a suitor in equity from obtaining relief. His misconduct must be so intimately connected to the injury of another with the matter for which he seeks relief, as to make it inequitable to accord him such relief. It must have been conduct which, if permitted, inequitably affects the relationship between the plaintiff and the defendant.''

The case of *Western Union Tel. Co.* v. *Commercial Pac. Cable Co.*, 177 Cal. 577 [171 Pac. 317, 320], is enlightening upon the subject. Here the cable company was discriminating against the telegraph company by, in effect, charging it about five dollars per message more for transmitting its messages over its lines to Oriental points than it was charging the Postal Telegraph Cable Company, a rival in business of the Western Union Telegraph Company, for a like service. The action was brought to prevent such discrimination and for damages. The cable company attempted to justify such discrimination on the ground that the plaintiff, Western Union Telegraph Company, was estopped from claiming that such discrimination was unjust because of the fact that it had itself been guilty of the same sort of dis-

crimination among its customers in its business throughout the country. In disposing of this contention of the cable company, the Supreme Court said:

"In its attempt to plead and prove by specific example the plaintiff's alleged delinquencies in respect to these matters, the defendant was frustrated by the action of the trial court through its order sustaining a demurrer to the defendant's supplemental answer setting forth the particulars of the plaintiff's sins in this regard, and by the further refusal of the court to permit testimony to be offered in support of the defendant's claim. There was no error in the action of the court in respect to these rulings. The maxim that 'He who comes into a court of equity must do so with clean hands,' has reference to the particular transaction, in which relief is sought, and not to the general morals or conduct of the person seeking such relief. Were it otherwise, courts of equity would have found themselves largely restricted in their powers to afford relief to that certain class of litigants which have most frequently sought to invoke their aid in modern times. We find no merit, therefore, in the defendant's plea of an estoppel to the plaintiff's claim of an unjust discrimination in the instant case."

Among numerous other California cases in point, the following are particularly applicable: *Miller & Lux et al.* v. *Enterprise Canal & Land Co.,* 142 Cal. 208 [100 Am. St. Rep. 115, 75 Pac. 770]; *American-Hawaiian Eng. etc. Co.* v. *Butler,* 165 Cal. 497 [Ann. Cas. 1916C, 44, 133 Pac. 280]; *Miller* v. *Kraus,* (Cal. App.) 155 Pac. 834.

The courts in other jurisdictions have generally, in applying the principle, announced the same doctrine as that announced by the courts of this state (*City of Chicago* v. *Union Stockyards & Transit Co. of Chicago,* 164 Ill. 224 [35 L. R. A. 281, 45 N. E. 430]), holding that the wrong must have been done to the defendant himself, and must have been in regard to the matter in litigation. (*Lyman* v. *Lyman,* 90 Conn. 399 [L. R. A. 1916E, 643, 97 Atl. 312]; *Coeur d'Alene Cons. & Min. Co.* v. *Miners' Union of Wardner,* 51 Fed. 260 [19 L. R. A. 382]; *Trice* v. *Comstock,* 121 Fed. 620 [61 L. R. A. 176, 57 C. C. A. 646].) In said last-named case the following language was used:

"General iniquitous conduct, reprehensible acts toward third parties, do not deprive a suitor of his right to justice in a court of equity. Wrongful conduct in the very act or matter which constitutes the complainant's ground of action, and that alone, will repel from a court of equity on the ground that 'he who comes into equity must do so with clean hands.' This rule does not disqualify any complainant from obtaining relief who has not dealt unjustly in the very transactions concerning which he complains." (Citing cases.)

Again, in the same case: "The acts charged against the complainants, even if they had been committed, did not tend to perpetrate any wrong or inflict any injury upon the defendants, raised no equity in their favor, and constituted no defense to the enforcement of the trust which their violation of duty established."

Other cases in point are: *Beekman* v. *Marsters*, 195 Mass. 205 [122 Am. St. Rep. 232, 11 Ann. Cas. 332, 11 L. R. A. (N. S.) 201, 80 N. E. 817]; *Shaver* v. *Heller & Merz Co.*, 108 Fed. 821 [65 L. R. A. 878, 48 C. C. A. 48]; *Brown* v. *Jacobs' Pharmacy Co.*, 115 Ga. 429 [90 Am. St. Rep. 126, 57 L. R. A. 547, 41 S. E. 553, 563]. This last-mentioned case is particularly applicable to the case at bar. The court said:

"It is urged that the plaintiff was not entitled to equitable relief, because it did not come into a court of equity 'with clean hands.' The specific claim of uncleanness is that, on some occasions, it sold one drug or mixture instead of or purporting to be, another. This is denied. If it were true, it would be no defense to this case. If it is undertaken to coerce a dealer not to sell at reduced prices, and is sought unlawfully to destroy its business if it does so, an application by it for injunction is not successfully met by saying that it sold some spurious goods, or misrepresented some to customers in certain sales. It was money, not morals, that moved the defendants in their conduct toward it for cutting prices. The doctrine that a suitor must enter a court of equity 'with clean hands' has reference to the transaction complained of by him. (*Ansley* v. *Wilson*, 50 Ga. 425.) If plaintiff sells adulterated drugs, it and its officers are liable to punishment under the criminal law."

█ Applying this thoroughly adjudicated and well-settled principle of equity to the case before us, the query most forcibly presents itself: Why should appellant be denied a standing in a court of equity in seeking to enjoin its former trusted agents and employees from using for their own gain its secret formulae, receipts and other like properties, acquired by them in the regular course of employment and have its action dismissed before it had concluded with the introduction of its evidence, simply because forsooth, in the course of its business career, it had been guilty of acts and conduct in dealing with others, which acts and conduct do not measure up to the moral code of square dealing? How were any of the respondents injured by any of the acts of misconduct which they charge against the appellant? What connection did the mislabeling of its products by appellant, or its system of fostering trade with public institutions, by the giving of premiums to the heads of departments, or its infringing upon the trade name and trademark of the No More Products Company, or its overreaching of the Germo Manufacturing Company of California, if perchance it did these things, have with the ''matter in litigation''—the ''subject-matter of the controversy''? In what way did any of the claimed acts of misconduct on the part of appellant ''affect the equitable relations subsisting between the parties'' to this litigation? Certainly none, as shown by the record before us. The Germo Manufacturing Company of California is not here in court complaining; neither is the No More Products Company, nor are the public authorities. If this were an action between plaintiff and any of these parties, a different situation would confront us.

█ Due and careful consideration has been given to each and all of the numerous points set forth in the brief of respondents in support of their claims that the judgment of the trial court should be sustained. Quite a large part of this brief would be strictly applicable, had the trial of the case before us been finished in the court below, and this were an appeal on the ground that the evidence was insufficient to support the judgment and respondents were trying to justify the judgment in this regard. This, however, is not the situation in this case. Respondents com-

plain that only a small part of the evidence adduced at the trial is embodied in the bill of exceptions. The bill, however, contains enough of the record to show beyond question that prejudicial error was committed by the trial court in the admission of evidence wholly irrelevant to the issues as raised by the pleadings and in dismissing the action before plaintiff had rested its case. It was, therefore, unnecessary to burden the record with more of the evidence. At any rate, if respondents desired more of the evidence adduced brought to this court than is shown in the bill of exceptions, it was their right and duty to have had same included therein.

Throughout respondents' brief the claim is made that even if errors were committed in the introduction of evidence on immaterial and irrelevant matters, such errors were not prejudicial to appellant and that the admission of such evidence was within the sound discretion of the trial court. We cannot agree with respondents' counsel in this regard. The decision of the trial court having been based entirely upon the proposition that plaintiff, with unclean hands, was in a court of equity, seeking relief, certainly it was highly prejudicial to allow evidence tending to show such fact of unclean hands to come into the case on wholly immaterial and irrelevant matters and on issues not raised by the pleadings. For instance, even if we should assume that under proper pleadings it would have been permissible for defendants to show that plaintiff had, in the course of its business, mislabeled some of its products, or had sold some products which were deficient in any respect, nevertheless, such line of evidence was entirely irrelevant and outside of the issues in the case before us for the reason that nowhere in defendants' answer is to be found any charge of mislabeling or selling deficient products by plaintiff. It is fundamental that under all circumstances the evidence adduced must be within the issues raised by the pleadings. In the case at bar the trial court was vested with no discretion in the matter of admitting evidence upon these immaterial and irrelevant matters tending to show "unclean hands" on the part of appellant.

In view of the conclusion which we have reached upon the paramount and fundamental question involved in the

suit, we deem it unnecessary to further discuss the various points made by counsel for respondents in support of the judgment. Suffice it to say that a careful consideration of each and all of them leads us to the conclusion that they are without substantial merit.

The judgment is reversed.

Thompson (R. L.), J., and Finch, P. J., concurred.