[Civ. No. 6589. First Appellate District, Division Two.—March 26, 1929.]

SUSIE CLARK, Respondent, v. UNITED FRUIT DISTRIBUTING CO. (a Corporation) et al., Appellants.

Robert H. Schwab for Appellants.

Everts, Ewing, Wild & Everts and A. W. Carlson for Respondent.

BURROUGHS, J., *pro tem.*—This is an action for damages. The cause was tried with a jury and a verdict rendered in favor of the plaintiff and against the defendant United Fruit Distributing Company for the sum of $2,500. From the judgment entered thereon said defendant appeals.

Appellants urge several points upon this appeal. The first of these is that there is a material variance between the allegations of the amended complaint and the proof. There are nine separate causes of action set forth in the amended complaint. The first six causes of action are based upon similar contracts which differ only in the names and the amounts involved. The last three concern the defendant Reedley National Bank, which was an escrow-holder of certain moneys deposited with it in accordance with the terms of the contracts referred to in the first six counts of the amended complaint.

At the trial the money held by the Reedley National Bank was by stipulation of the parties deposited in court and no judgment was entered concerning said bank. As heretofore stated, the six causes of action being the same except as to the names and amounts, a decision of the question involved by reference to the first count only will be decisive of all six.

It is alleged in the first count of the amended complaint "That on or about the 19th day of September, at Reedley, California, plaintiff and the defendant, United Fruit Dis-

tributing Company, entered into an agreement in writing wherein and whereby plaintiff agreed to sell to the said defendant, and the defendant, United Fruit Distributing Company, agreed to buy certain Muscat U. S. Grade #1 grapes; that under the terms of said written agreement said defendant agreed to pay, upon delivery, this plaintiff for said grapes at the rate of Thirty Dollars ($30.00) per ton, and thereafter and under the terms of said contract plaintiff delivered to said defendant at Reedley, California, 141496 pounds of Muscat grapes, U. S. grade #1, and defendant paid said plaintiff for said grapes the sum of Twenty-one Hundred Thirteen and 43/100 Dollars ($2113.43) and no more; that said plaintiff was at all times during said grape shipping season of 1925 ready, able and willing to deliver to said defendant 108504 pounds of Muscat grapes, U. S. Grade #1, in fulfillment of the terms for the balance of said grapes to be delivered under said contract, and said plaintiff duly tendered said grapes to said defendant at its packing plant at Reedley, California, pursuant to the terms of said written contract; that the said defendant then refused to accept and ever since has refused to accept said grapes so tendered as hereinbefore set out and refused to pay for said grapes so tendered pursuant to its agreement, or otherwise, to the damage of plaintiff in the sum of Sixteen Hundred Twenty-seven and 56/100 Dollars ($1627.56).''

In support of this allegation of the complaint the plaintiff offered and the court received in evidence over the objection of the defendant the following contract:

"Original                    #30                    No. 230
                    "Consigned Contract.
                    "Reedley, Calif., Sept. 19, 1925.

"For and in consideration of the covenants and agreements set forth and also in consideration of one dollar ($1.00) receipt whereof is hereby acknowledged, Susie Clark, hereafter called the Grower, hereby places in the hands of the United Fruit Distributing Company, of Sacramento, Calif., to market for grower's account on the following terms and conditions her crop of shipping Muscats U. S. Grade #1 grown or to be grown, during the season of 1925, on the property known as Clark Place in Fresno County, California, about ½ mile S. of Reedley, estimated as fol-

lows: 10 carloads (125 tons more or less) Price $30.00 per ton ¾ car per day shipment beginning Oct. 5 all of which the grower claims to be his absolute property free from any encumbrances.

"All fruit delivered under this contract to be of good merchantable quality suitable for eastern shipment subject to State Inspection. Said fruit to be picked and delivered at Grower's expense, to United Fruit Dist. Co., packing house, or place of loading at Reedley, or in case of car shortage, strikes or any causes over which United Fruit Distributing Company have no control the grower shall deliver the fruit at the next available loading point where cars may be placed for loading.

"The United Fruit Distributing Co., shall have a lien upon all said fruit for any moneys that may be advanced by it. This contract shall not be revokable during its term and shall not expire until all moneys advanced by the Company have been fully satisfied, but shall continue from year to year on above crop until fully paid.

"The United Fruit Distributing Co., reserves the right to terminate this contract and be relieved from all liability in case of car shortage, strikes, epidemics, scarcity of labor, war affecting transportation, and other causes affecting the transportation and marketing of fruit.

"The United Fruit Distributing Co., reserves the right to restrict the grower's deliveries of fruit under this contract, this to be governed as nearly as possible by the number of cars available for loading by the United Fruit Distributing Co.

| U. F. D. Co. to deposit $6.00 | SUSIE CLARK, |
|---|---|
| per ton in escrow in Reedley | Grower. |
| Natl. Bank as guarantee to | UNITED FRUIT DISTRIBUTING |
| take total cars covered by | Co., |
| this contract U. S. Grade #1 | Per T. C. BRAZILL, |
| Copy | Ck 3017 deposit $750.00" |

It is claimed by the appellant that this allegation of the complaint is purely an allegation of a buy and sell contract, while the contract received in evidence is one of consignment only and therefore constitutes material variance between the allegations and the proof. There can be no question that the complaint is predicated upon a buy and sell contract. It also appears from the contract itself that

it is denominated "Consigned Contract." It also appears therein that the grower placed her crop of grapes in the hands of the defendant United Fruit Distributing Company "to market for grower's account." Standing alone and unaided by other portions of the contract there can be no doubt that it would be a contract of consignment, but it further appears in said contract that the quantity of grapes which it was estimated would be produced on the ranch of the grower was ten carloads or 125 tons of grapes more or less. That the price to be paid was $30 per ton. It further appears in the contract that the United Fruit Distributing Company was "to deposit $6.00 per ton in escrow in Reedley National Bank as a guarantee to take total cars covered by this contract U. S. Grade #1." It would thus appear from the evidence just quoted that the defendant was to pay the plaintiff a flat price of $30 per ton for 125 tons and that as a guarantee that they would take the same they made the deposit of $6 per ton in the Reedley National Bank. We are of the opinion that this is sufficient to establish the contract as one of buy and sell, but if the contract were held to be uncertain upon this point the evidence introduced was sufficient to justify the court in holding that it was in fact a buy and sell contract. The evidence submitted to the court relating to the circumstances surrounding the execution of the contract was, as is usually the case, conflicting. The testimony of the plaintiff and her assignors was to the effect that when the contract was first presented to them for signature it was without doubt a consignment contract, but that they refused to sign the same and stated they would not sell their crop except for cash. That thereupon certain portions of the contract were stricken out and the changes made by which the defendant was to pay $30 per ton at the time of delivery for the entire crop of approximately 125 tons and the guarantee deposited with the Reedley National Bank to fulfill the terms of the contract. There is evidence on behalf of the defendants in rebuttal of this testimony, but the court in the first instance, and the jury in the last instance, adopted the testimony offered by the plaintiff that it was in fact a buy and sell contract. It has been held that one of the best methods of interpretation of a doubtful contract is the construction placed upon it by the parties themselves. In the practical construction of the

contract before the court it appears without conflict that when the shipments of grapes were made, the defendant, without waiting to receive any word whatever from those to whom the shipments were made, immediately paid cash to the plaintiff at the rate of $30 per ton. While defendant offered evidence to explain away this interpretation of the contract it was for the court to determine which party was right. We are therefore of the opinion that upon its face the contract is one of buy and sell, but if this conclusion is open to question then the evidence offered to explain its effect also establishes that it was a buy and sell contract. The point is not well taken.

The appellant further claims that the implied finding of the jury that under the terms of the written contract defendant agreed to pay upon delivery $30 a ton for the grapes is not sustained by the evidence. However, we believe that this contention has already been answered by what has been heretofore said under the first claim of error.

■ The next contention made by appellant is that there is no evidence to sustain the allegation of the amended complaint that "said plaintiff duly tendered said grapes to said defendant at its packing plant at Reedley, California, pursuant to the terms of said contract." It is undisputed that the defendant gave notice to the plaintiff that it would not accept any further shipment of grapes under the contract. It further appears from the evidence that the plaintiff was prepared to deliver grapes in accordance with the terms and conditions of the contract and therefore it is immaterial whether or not she actually offered to deliver the grapes in accordance with the terms of the contract. Section 1440 of the Civil Code provides: "If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the same upon his part, and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party." To the same effect are *Lemle* v. *Barry*, 181 Cal. 1 [183 Pac. 150]; *Hoover* v. *Wolfe*, 167 Cal. 337 [139 Pac. 794]; *Gray* v. *Dougherty*, 25 Cal. 266. Plaintiff was therefore excused from making an actual tender of the grapes.

■ The fourth point of alleged error is based upon the claim that the defendant terminated the contract because of

a shortage in cars. That there was a car shortage appears from the evidence, but whether it was sufficient to justify the defendant in terminating the contract was one of the disputed facts in the case and the verdict of the jury carried with it an implied finding that the shortage was not sufficient to warrant the defendant in declaring that the contract was ended.

The last point urged is to the effect that the evidence is overwhelming that the undelivered grapes were not U. S. grade No. 1. The evidence shows without conflict that after the termination of the contract the defendant accepted from the plaintiff, but under a different arrangement, U. S. grade No. 1 grapes. True, some of the grapes delivered were not up to the standard required by the contract, but such grapes the defendant was not bound to accept, while it was compelled to accept those that measured up to the contract. Therefore, defendant's claim is not substantiated by the evidence and the jury were acting within their province when they determined this question adversely to the defendant.

No reason has been shown why the judgment should be disturbed and, therefore, it is affirmed.

Sturtevant, J., and Koford, P. J., concurred.