[Civ. No. 4425. Fourth Dist. Dec. 19, 1951.]

JOHN H. JACKSON, Respondent, v. FRANK BELMONT, Appellant.

G. V. Weikert and S. B. Kaufman for Appellant.

Harold Richardson for Respondent.

GRIFFIN, J.—Plaintiff owned 7 acres of orange trees. He brought this action against defendant Frank Belmont, doing business as Granada Packing House, and alleged in his complaint that on June 4, 1949, defendant executed an agreement in writing with plaintiff whereby plaintiff agreed to sell and deliver to defendant all crops then grown or to be grown on his citrus trees until the date of December 31, 1949; that pursuant thereto defendant picked all crops growing in said orchard within 30 days from the execution of the agreement; that by its terms defendant agreed to pay plaintiff $1.00 per field box for the fruit as picked and that said sum was to be paid when the fruit was picked; that defendant picked and removed 2,809 field boxes to his packing house; that $2,809 is due under the agreement and that no payment thereof has been made except the sum of $1,000, which defendant paid to plaintiff upon the execution of the agreement.

Defendant denied owing this amount, claimed that this agreement was but a consignment contract for the sale of the fruit and that only fruit which was "merchantable" was in-

cluded in the agreement and that defendant netted only $587.68 from the sale thereof. Defendant filed a cross-complaint alleging overpayment of $412.32.

The trial court found generally that the allegations of the complaint were true and gave judgment in favor of plaintiff. It found against defendant on his cross-complaint. On this appeal the defendant claims: (1) that there was a fatal variance between the allegations of the complaint and the proof; and (2) that under the terms of the written contract between the parties, defendant was entitled to recover from plaintiff the amount prayed for in his cross-complaint.

The written agreement relied upon by the parties consists of the ordinary printed form of consignment contract between the growers and the packers and shippers of citrus fruits, as modified and amended by the parties at the time of its execution. It provides, in part:

"In consideration of the mutual covenants herein assumed, the undersigned Grower agrees to and does hereby consign to Frank Belmont . . . hereinafter referred to as Shipper . . . oranges now growing and to be grown during the term of this contract of his citrus orchard consisting of 7 acres. . . . This contract covers merchantable fruit only and the shipper or his agent shall be the sole judge as to the merchantability of said fruit, and shall decide at the time of processing what shall be accepted as merchantable fruit. Since frozen fruit goes into by-products same is not accepted as merchantable . . . Shipper agrees to pay to the grower the total amount received from the sale of said fruit, after deducting therefrom all sums of money (1) paid out or advanced hereunder", etc. "Grower hereby authorizes Shipper to pool said fruit with that of other growers each season during the life of this contract in one or more pools, or individually, . . . and the return from the sale shall be prorated to the grower. . . ."

Certain paragraphs of the printed form were stricken by the parties and then there was added to this ordinary consignment contract these penciled provisions (written by the agent of the defendant) which provisions are the main subject of dispute on this appeal. They provide that the shipper: "guarantees $1.00 per field box. Same to be paid when fruit is picked. All of which is to be retained by grower. Picking is to start on or before June 7, 1949. To be continuous in force until crop is picked. This contract terminates Dec. 31—1949."

It is defendant's argument that the complaint alleges a cause of action based on a claimed sale and delivery of the oranges to defendant; that the proof shows nothing but a consignment to defendant for the purpose of sale and that if the added clause could be reasonably interpreted that defendant guaranteed to pay $1.00 per field box regardless of the fact that such fruit was not merchantable, the pleadings do not state a cause of action based upon a guarantee, and accordingly there is a failure of proof, citing section 471 of the Code of Civil Procedure; 21 California Jurisprudence, page 267, section 185; and *Lavely* v. *Nonemaker*, 212 Cal. 380, 385 [298 P. 976].

It is plaintiff's contention that the penciled portion of the agreement is inconsistent with the printed form; that the several provisions, when considered together, are ambiguous and that the trial court was justified in receiving in evidence the statements of the parties as to what was said at the time, as bearing upon the question as to what was intended by them in respect to the additions and alterations there made and to explain the ambiguities but not to modify the terms of the written agreement. He cites Civil Code, section 1651, to the effect that where there is a partly written contract and a partly printed contract, with a special view to the intention of the parties in mind, the written part controls the printed part. He also relies upon *Clark* v. *United Fruit Distributing Co.*, 97 Cal.App. 784 [276 P. 374], where a material variance between the pleadings and proof was claimed to be fatal. That case was factually similar to the instant case and the court held that without the *agreement* or *guarantee* to pay a *definite sum* for the *grapes shipped*, the contract, standing alone, would be a contract of consignment, but with *such an agreement*, accompanied by the evidence produced on the subject, the court might reasonably construe it to be a contract to buy and sell, and that ''one of the best methods of interpretation of a doubtful contract is the construction placed upon it by the parties themselves.'' The court there held the point was not well taken. Defendant criticizes the decision in that case as not laying down any broad principle of law, but as being a decision applicable only to the facts of that case. The conclusion there reached is not lacking in judicial support.

In *White* v. *Ardzrooni*, 71 Cal.App. 393 [235 P. 461], the question of a guaranteed price affecting a consignment contract was discussed and the court said, at page 400:

''The writing itself provides for a minimum guaranteed

price. If deductions were to be made from the guaranteed price, then that term in the written agreement would become practically meaningless. We think the true construction of the instrument and which carries out the intention of the parties to be that the defendants undertook to guarantee certain returns to the growers for the grapes to be handled by them and were to be compensated out of whatever sums might be realized over and above such guaranteed prices. If this be not true, then the grower had no guaranteed price."

To the same effect is *Rasmussen* v. *Pacific Fruit Exchange,* 111 Cal.App. 346 [295 P. 538], decided by this court (hearing in the Supreme Court denied). The cause of action was predicated upon a verbal contract whereby the exchange agreed to pack and sell grapes for plaintiff and guaranteed the grower a certain specified sum. There the defendant accepted the grapes and advanced plaintiff a specified amount on account. The action was for the balance claimed due under the oral agreement. The defendant denied the guarantee of a fixed price and alleged that the grapes were delivered to it as broker to sell for the growers upon a commission basis. The court gave judgment for plaintiff as prayed and cited *Glantz* v. *Freedman,* 100 Cal.App. 611 [280 P. 704], as authority for the statement that "plaintiff could sue the defendant for the reasonable value of his grapes instead of basing his suit upon a guaranteed price."

With these rules in mind we will consider the evidence produced indicating the real purpose of the additions and modifications of the printed form contract. It was stipulated that defendant Ogilvie, in whose favor the court gave judgment, was the field agent of defendant and had authority to enter into the contract as modified.

Plaintiff testified that Ogilvie first contacted him a week or 10 days before the contract was signed (apparently there was some previous conversation in which plaintiff told the agent he was not interested in a consignment contract but wanted to sell for cash). He testified that thereafter the agent called him and told him he had a "deal" for him and "it wasn't consignment"; that he would agree to pay plaintiff $1.00 per field box when the fruit was picked, and that he asked Ogilvie "If I have 3000 boxes of fruit picked and with this $1.00 a box guarantee, will I receive $3,000 for that 3000 boxes?" And that the agent said: "All right"; that at the same time the agent also told him that even if the fruit picked brought less than $1.00 per box, he was to retain the $1.00 guarantee,

but if it brought more, he would be paid for the balance at the end of the season; that as soon as the fruit was picked plaintiff could go to the packing house and pick up his "guarantee check." He testified that the agent wrote in these provisions as the matters were discussed; that after the fruit was picked he called Ogilvie and asked him if he could pick up his guarantee money and that Ogilvie told him "You can get it any time." He then stated that he asked him if it would be all right for his wife to call at the packing house that afternoon and pick up the check and that he said it would be all right; that he asked who she should see there and he told her to see a Mr. Lindefeste.

Ogilvie testified that he first visited plaintiff's ranch, made an inspection of the grove, and checked a representative sample of the fruit; that he did not recall his estimate of frost damage and did not recall the substance of his conversation with plaintiff prior to the execution of the contract, although he did have several conversations with him leading up to it; and that he did not remember the substance of the conversation with plaintiff at the time certain handwritten portions of the contract were written in by him.

Plaintiff's wife testified that she was present when Ogilvie inspected the grove and that he, after cutting "a lot of oranges" stated that he estimated that the oranges were between 15 and 20 per cent "hurt" due to frost; that he took a sack full of fruit to the plant as samples; that she called at the plant after the crop had been picked and saw Mr. Lindefeste who told her that Mr. Belmont was not in at the time and did tell her: "Your check will be in the mail tonight." This testimony is uncontradicted. No check followed.

On June 22, 1949, defendant wrote plaintiff that he had no funds coming to him and set forth the claimed disposition of the fruit and its classification, as reflected in his books. Demand was made by plaintiff for the claimed $1,809 due under the agreement. This action followed.

Defendant offered in evidence the canceled $1,000 check. From the endorsement appears the wording: "This check is accepted as an accommodation advance." Defendant argues that this endorsement conclusively shows the nature of the transaction as being one of "consignment."

After submission of the case the trial judge, in summarizing the evidence, appropriately stated that "Nobody looking at this blank form could consider it anything other than a consignment contract, and I am inclined to think that

they tried to add something to it to take it out of the category of being a plain consignment contract, and that apparently was an attempt of both parties. That is manifested first by the fact that the man who actually did the writing expressed no recollection as to it and can't remember anything about it, and we have the positive testimony that the man who doesn't remember is the man who did the writing and that he agreed and guaranteed that there was going to be a dollar a box paid for every box taken out of there, and payable when it was taken out, and not later, when they found out what part was merchantable, and whatever was paid was to be retained.'' He remarked: ''There would have been no occasion, whatsoever, to have used the word 'retained' had there not been intended to be a modification of the consignment contract. 'Retained' and 'consignment' are as foreign to each other as black and white. This (printed form) was an agreement that Mr. Jackson was to refund some part of the thousand dollars if the fruit didn't pack out. The word 'retained' absolutely does violence to that understanding. It is as obvious as anything can be that whatever Mr. Jackson got was to be in his pocket without any agreement for return. . . . You can't possibly reconcile 'consignment' and 'retained'. . . . The check isn't the contract. This contract says 'whatever Jackson got he was to retain' and what was written in the handwriting of the authorized agent of Mr. Belmont. . . . In the event the writing and the printing are inconsistent . . . the writings govern. I think the two are inconsistent. . . .''

The reasoning and conclusions of the trial judge have not only evidentiary support, but are legally fortified by the cases cited. When considering the contract in connection with the evidence received in support of the interpretation placed upon it by the parties, it may be properly said that there was sufficient evidence to justify the court in holding that there was no fatal variance between the pleadings and proof, and that there was sufficient evidentiary support for the judgment rendered.

In view of this conclusion the court was justified in holding that defendant was not entitled to a recovery on his cross-complaint.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.