[Civ. No. 4472.   Fourth Dist.   Dec. 10, 1952.]

ANNIE M. GROOVER, Respondent, v. FRANK BELMONT, Appellant.

G. V. Weikert and S. B. Kaufman for Appellant.

Utt & Hubbard and Delbert L. Larsh for Respondent.

BARNARD, P. J.—This case involves an orange crop agreement. The plaintiff, an elderly woman, had for many years marketed her fruit through a consignment contract with the American Fruit Company. Because of frost damage this company advised her to sell her 1949 crop for cash instead of marketing it in the usual manner. She contacted the Granada Packing House, operated by the defendant, and was told that they were buying for cash. They sent their buyer, one Ogilvie, who made an agreement with her. She signed a printed form of consignment contract providing, in part, that it was to continue in effect until terminated in the manner provided; that it covered merchantable fruit only, the defendant to be the sole judge of merchantability; and that the grower was to be paid the net proceeds after deducting $1.40 per packed box for packing services, all picking, hauling, shipping and other charges, and any advances made. It contained a further provision, written in by Ogilvie in longhand, that the defendant "guarantees 35¢ per field box" for all fruit received and accepted.

On July 25, 1949, the day after picking was completed, the defendant gave the plaintiff a check for $2,500 marked "accomodation advance." On November 21, 1949, the plaintiff sent the defendant a written notice that she was withdrawing from the contract as of that date. On December 28, 1949, the defendant sent the plaintiff an "accounting" setting forth that 6,630 field boxes had been received; that 67 boxes were unmerchantable; that the net field boxes were 6,563; that the net return from sales of 6,380 boxes and some "bags" was $2,894.15; that the deductions for picking and hauling and "frost separation" were $2,643.35; that the net returns were $250.80; that there was due the defendant $2,249.20; and that "your return exceeds your guarantee." About a month later, another "accounting" was sent showing exactly the same figures except that it listed 5,667 field boxes as unmerchant-

able and the net field boxes as 963, and stating that an error had been discovered "concerning unmerchantable fruit." On March 10, 1950, the defendant wrote to plaintiff admitting receipt of the withdrawal notice and stating that because there was a balance due him he "deemed" the contract still in force. On March 22, 1950, the plaintiff's attorney sent the defendant a check for $179.50, the amount paid in excess of the guarantee, and stating that the $2,500 was a payment for fruit and not an advance, and that she would resist any attempt to market her fruit during 1950. On March 23, the defendant returned the check, stating it was not the correct amount, and insisting that this was a consignment contract and not one of purchase.

In this action which followed the complaint alleged, in addition to the factual background, that the defendant had agreed to buy this crop at a guaranteed price of 35 cents per field box, with a representation that more than the guaranteed price might be received; that Ogilvie had falsely represented to plaintiff that it was necessary that she sign this "form contract," that it was used in all such sales, and that it did not contain any provisions inconsistent with the outright sale of the fruit at a guaranteed price of 35 cents per field box; that he thereupon wrote the words of the guarantee in the form-contract; that plaintiff signed the contract in reliance on these representations, which were false and knowingly made; that she was given $2,500 in payment for the fruit, with the explanation that an even figure was used since she could expect more than the guaranteed price; that on November 1, 1949, she first learned that this form contract purported to be a marketing agreement, instead of an outright sale, and then gave written notice of withdrawal; and that on March 10, 1950, she first learned that the defendant contended that she was indebted to him and that her withdrawal was ineffective. It was then alleged that an actual controversy exists in that she contends that her signature was obtained by fraud, that the only contract was one of sale and not one of consignment; that the written part of the contract is inconsistent with the printed portion, and that the $2,500 was not a mere advance; while the defendant contends that this is a consignment contract, that the $2,500 was merely an advance, and that there is a balance due him of $2,301.95. The prayer was for declaratory relief; for an accounting; that the court declare the contract be one of sale and not one of consignment; and for other equitable relief. The defendant, by answer and cross-

complaint, admitted the agency of Ogilvie; alleged that this was a consignment contract; and sought to recover $2,361.03 for money advanced, with an additional $2,800 as liquidated damages for failure to permit him to handle the 1950 crop.

At the conclusion of the trial the court expressed doubt as to whether the proper relief could be granted under the pleadings, and ordered the plaintiff to amend her answer to the cross-complaint, in order to conform to the proof, by setting up a clear-cut action for reformation of the contract. This was done with appropriate allegations of mistake, fraudulent representations, and fraudulent concealment. The court then made full and complete findings in favor of the plaintiff finding, among other things, that the defendant had agreed to purchase this crop at a guaranteed minimum price of 35 cents per field box for each and every box picked; that this agreement applied only to the 1949 crop; that as a result of plaintiff's mistake, known to the defendant, and of the misrepresentations of the defendant, the written contract did not embody the actual agreement but was wholly inconsistent therewith; that the representations made were false; that the plaintiff had signed the contract relying on representations that it contained nothing inconsistent with the guaranteed minimum price; that the $2,500 exceeded the guarantee but was not a loan or an advance; and that the plaintiff is not indebted to the defendant in the sum of $2,361.03, or any other sum except $179.50. Judgment was entered reforming the contract so as to provide that the defendant agrees to purchase this 1949 crop at a guaranteed minimum price of 35 cents per field box for each and every box picked, and providing that this agreement is not a marketing or consignment contract; that the agreement as so reformed applied only to the 1949 crop; and that the defendant have judgment against the plaintiff for $179.50. The defendant has appealed from that judgment.

It is first contended that the court erred in ordering or permitting the amendment to conform to proof. It is argued that the action, being for declaratory relief, involved only an interpretation of the written contract; that since there was no ambiguity, inconsistency or uncertainty in that contract parol evidence was not admissible; and that the oral evidence erroneously received not only varied the terms of the written contract but gave them a completely opposite effect. Relying on sections 469 and 470 of the Code of Civil Procedure and several cases, it is argued that an amendment to conform to

proof cannot be allowed when it has the effect of substantially changing the cause of action.

The oral evidence was properly admitted here. The written contract was ambiguous in many respects and there was an obvious inconsistency between the provisions contained in the fine print and the provision written in longhand. The latter guaranteed 35 cents per field box to the grower for the fruit taken, while the former provided that the packer should pay the grower only what was left after deducting numerous charges, and after eliminating any fruit which the packer might prefer to consider as unmerchantable. Moreover, mistake, misrepresentation and fraud were alleged and the validity and nature of the agreement was the fact in dispute. (Code Civ. Proc., § 1856; *DeOlazabal* v. *Mix,* 24 Cal.App.2d 258 [74 P.2d 787].) The amendment to conform to proof did not introduce a new and independent cause of action but was based upon the same transaction and the same contentions, and was merely directed to a different form of relief. (*Rosemead Co.* v. *Shipley Co.,* 207 Cal. 414 [278 P. 1038]; *Big Boy Drilling Corp.* v. *Rankin,* 213 Cal. 646 [3 P.2d 13].) ▇ The amendment here permitted, whether necessary or not, was properly allowed under the facts established at the trial in order to do justice and to avoid further useless litigation. (*Carman* v. *Athearn,* 77 Cal.App.2d 585 [175 P.2d 926].)

▇ It is next contended that the amendment did not conform to the proof since it appears that the respondent understood the effect of this consignment contract and was in no way deceived by any statement made to her; and that the findings on which reformation was based are not supported by the evidence since there was no finding of fraud on the part of the appellant or his agent, and the evidence negatives the possibility that Ogilvie could have known of or suspected any mistake on the respondent's part.

The evidence and record do not support these contentions, and fraud was both alleged and found. There is little conflict in the evidence as to the controlling facts which, so far as the written contract is concerned, are similar to those in the case of *Jackson* v. *Belmont,* 108 Cal.App.2d 288 [238 P.2d 1084], where this same appellant made like contentions.

The respondent testified that her regular shipping company advised her to sell that year's crop for cash; that in response to her inquiry the appellant said they were buying for cash and sent Ogilvie out; that Ogilvie offered her 25 cents a box

or 50 per cent of what the fruit brought, which she refused; that he came back later and said they would take the crop with a guarantee of 35 cents a field box for all oranges picked, and that she might get a little more if the market held up; that when she objected to signing the contract he presented he told her that he did not have a form of cash contract with him and that they had to have some kind of contract for "prorate" purposes; that he wrote in the provision guaranteeing 35 cents a field box and told her that she could disregard the rest of the matters stated in the form, that if she signed the contract it would guarantee her 35 cents a field box and she might get a little more, and that she could follow the last load in and get her money; that she never asked for any advance; that immediately after the fruit was delivered she was given a check for $2,500; and that when she noticed the words "accomodation advance" on the check they told her the reason therefor was that the fruit might bring more than the guarantee.

Her testimony is fully supported by Ogilvie's testimony although a part thereof was equivocal in a marked degree. He testified that at their first conversation respondent insisted that she must have not less than 35 cents a field box for the fruit as it stood on the trees; that having inspected the fruit he thought this was too much and told her he would submit the matter to the appellant; that the appellant went with him to inspect the fruit and told him there was more good fruit there "than I thought there was"; that the appellant instructed him to conclude a deal "on the basis of 35¢ a field box"; that he then told the respondent that the appellant would take the fruit and guarantee 35 cents for every box that came off the trees; that he presented the contract, to which the respondent objected; that he explained a part of it and left it with her; that the contract was later signed; and that when he delivered the check he explained to the respondent that the appellant had made a check for an even $2,500, and that this might be a little more or a little less than their guarantee would come to. On cross-examination, he testified that before the contract was signed he told the respondent that the contract only covered merchantable fruit, and that "that was the reason the guarantee was as low as it was." This explanation is strange in view of the admitted fact that the appellant was then paying $2.50 a hundred for undamaged oranges. Moreover, on redirect examination Ogilvie testified that he had told the respondent that while

the contract covered merchantable fruit only "the guarantee which was in the contract was based on the average amount of merchantable fruit"; that she would get "35¢ for every field box taken out of the grove"; and that she could get her money as soon as the fruit was picked.

The evidence supports the findings, which in turn support the judgment. As the trial judge remarked, it seems unbelievable that the respondent would leave the company with which she had dealt for years, in order to avoid a consignment deal, and then enter into a consignment agreement with the appellant. Under his interpretation of the contract, the appellant finally decided that the part of the fruit which he had actually sold for $2,200 was unmerchantable, and he also charged the respondent with expenses which exceeded the minimum amount he had agreed to pay.

It is next contended that the judge reformed the contract improperly in any event. It is argued that instead of merely reforming some clause or sentence the court wrote an entirely new contract for the parties. This contention is without merit. The court determined the real agreement made by the parties and reformed the written contract to express that agreement.

The appellant's final contention is that he was entitled to judgment on his cross-complaint for $2,361.03, for money advanced and on a book account and, under another cause of action, for $2,800 as liquidated damages for the failure to deliver the 1950 crop from this grove. This is based on the assumed validity and effect of the contract as written, and on the contention that the court was without power to ascertain or enforce the real intention of the parties. The court having properly reformed this contract (*Stafford* v. *California C. P. Growers,* 11 Cal.2d 212 [78 P.2d 1150]), no foundation for this claim remains.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.