[L. A. No. 23097. In Bank. June 11, 1954.]

A. W. CHASTAIN, Plaintiff and Appellant, v. FRANK BELMONT, Defendant and Appellant.

Harvey, Rimel & Johnston and Fred D. Johnston for Plaintiff and Appellant.

G. V. Weikert and S. B. Kaufman for Defendant and Appellant.

CARTER, J.—Plaintiff, A. W. Chastain, brought an action for damages for conversion against defendant, Frank Belmont. Defendant cross-complained for "Money on a Book Account and for Liquidated Damages." Findings of fact, conclusions of law, and a judgment were entered, and both parties appealed.

The pleadings show that the parties entered into a certain agreement entitled a "Consignment Contract" in August, 1949. The construction and interpretation of this contract is, essentially, the only point involved in the case.

The contract provided, in part, as follows:

"In consideration of the mutual covenants herein assumed, the undersigned Grower [A. W. Chastain] agrees to and does hereby consign to Frank Belmont, doing business as Granada Packing House hereinafter referred to as Shipper, of Anaheim, California, all oranges now growing and to be grown during the term of this contract of his citrus orchard consisting of 15 acres. . . .

"This contract covers the citrus fruit growing and to be grown on said grove on and after the date of this contract and until this contract is terminated by the Grower in the following manner: The Grower, if he is not indebted to the Shipper, may terminate this contract by giving Shipper a written notice to that effect during the last ten days of November of any subsequent year and in such event this contract shall be automatically converted into a prorate contract, covering the fruit to be grown on said orchard during the following season.

"This contract *covers merchantable fruit only and the Shipper or his agent shall be the sole judge as to the merchantability of said fruit, and shall decide at the time of processing what shall be accepted as merchantable fruit. Since frozen fruit goes into by-products, same is not accepted as merchantable.* . . .

"Shipper agrees to pay to the Grower the total amount received from the sale of said fruit, after deducting therefrom all sums of money (1) paid out or advanced hereunder, or (2) loaned or advanced to or for the use and benefit of the

Grower, or (3) paid out for picking and processing said fruit, also deducting . . . [enumerated charges]. Should the fruit hereby consigned be not sufficient to repay said Shipper all sums, amounts or charges above mentioned, Grower agrees to pay any balance to Shipper within 10 days after notification by Shipper of the amount due, and in the event of his failure to pay same within 10 days after such notification the term of this contract shall be extended to cover the following season and shall thereafter be further extended to cover succeeding seasons while Grower remains indebted to Shipper. . . .

"Grower agrees to pay the Shipper as liquidated damages, the sum of thirty-five cents (35c) for each and every commercial package or box (known to the trade as 'standard field box') or the equivalent thereof of citrus fruit, which the Grower may dispose of, sell, market or consign to any person other than the Shipper named herein or that Grower may remove or permit to be removed from said citrus orchard or fail to deliver to said Shipper, it being specifically agreed that it is impracticable and extremely difficult to fix the actual damage which would there be suffered by the Shipper.

"*Shipper guarantees to Grower 1.00 per field box for 3519 cu. inch box** for all citrus fruit received and accepted as per contract for and during current season only.

"This contract supercedes [sic] and supplants all preliminary or other prior arrangements or agreements, oral or written, and no verbal representation or guarantee by either party or the agent of either party to the execution of this agreement or during its performance, shall be recognized by, or binding upon, either party. The terms of this contract cannot be changed or altered by any provisions added hereto *unless such additional provisions are personally approved in writing by the Grower and Frank Belmont.*" (Emphasis added.)

This contract was signed by A. W. Chastain, as Grower, and by Herb Miller on behalf of Granada Packing House. On the back of *the copy of the contract retained by Chastain* were these words: "This contract covers 1949 crop only. Herb Miller."

Chastain sued for damages for conversion alleging that Belmont had picked 1,226 field boxes of Valencia oranges of Chastain's 1950 crop. Belmont's cross-complaint alleged the written contract; that Chastain was indebted to him in the sum of $5,297.60—the balance due him by reason of a $6,000

---

*Written in pencil.

advance made to Chastain at the time the contract was entered into; and for liquidated damages under the contract at the rate of 35 cents per box for the balance of the 1950 crop of Valencia oranges which Chastain had withheld from him and disposed of elsewhere.

It is Chastain's position that the $1.00 field box guarantee applies to *all* oranges picked by Belmont. Belmont, on the other hand, contends that the guarantee applies only to *merchantable* fruit as to which he, as Shipper, was the sole judge. Under Chastain's theory, he admittedly owed $1,034, which was allegedly the balance due Belmont from the $6,000 advance made after the various deductions had been taken care of.

The trial court concluded (the findings of fact will be set forth at length in the succeeding pages) that the contract was, in reality, one of purchase and sale; that it was in effect and covered the 1950 crop; that Belmont owed Chastain $1.00 per box for *all* oranges picked by him in 1949 and 1950; that Chastain owed Belmont, as liquidated damages, the sum of 35 cents for each of the 2,049 boxes which he had prevented Belmont from picking and had disposed of elsewhere. Belmont was awarded judgment on his cross-complaint against Chastain in the sum of $620.79 together with costs. Belmont appeals from the judgment only in so far as it awarded him the sum of $620.79 instead of $5,085.14 plus interest. Chastain appeals from the judgment only in so far as it awarded Belmont liquidated damages and costs.

## BELMONT'S APPEAL

Belmont contends that under the consignment contract the guarantee was limited to that portion of the 1949 crop of fruit classified by him as merchantable and that certain findings of fact made by the trial court with reference to the contract were confusing, conflicting, self-contradictory and unsupported by the evidence.

Finding XX complained of found as true all the allegations of Chastain's first, second and third affirmative defenses to Belmont's cross-complaint except the allegation that the contract was one of consignment. As to the contract, the court found it to be one of purchase and sale.

In the first affirmative defense just referred to, Chastain alleged that he had at first refused to sell his 1949 crop of oranges when approached by defendant's agent because he had been offered a guarantee of $1.00 per smaller field box net on the trees and that he had so advised defendant's agent.

Chastain alleged that defendant, through his agents and servants, represented to him that if he would execute the consignment contract "cross-complainant would guarantee to cross-defendant a minimum of $1.00 per field box for a 3519 cubic inch box" and that after certain deductions were made if the fruit when sold "brought sufficient money, not only to meet the guarantee of $1.00 per box, but to pay said costs and expenses, that the additional returns would then be paid to cross-defendant; that cross-defendant agreed to cross-complainant's proposal." It is also alleged that when the contract was presented to him, defendant's agent represented that the contract expressed the oral agreement of the parties; that these representations were false and were made to cheat and defraud him and with the intention that he rely thereon; that had he not believed the representations he would not have executed the contract or agreed to sell his fruit to defendant; that he did not learn that the contract did not conform to the oral agreement until he received a statement from the defendant in January, 1950. It is also alleged that immediately upon ascertaining the number of field boxes which had been picked by defendant, he offered to repay the defendant the difference between the number of field boxes picked at the guaranteed price of $1.00 per box and the sum of $6,000 advanced by defendant.

In Chastain's second affirmative defense, it is alleged (after incorporating the allegations of the first two paragraphs of the first affirmative defense) that at the time of the execution of the agreement, defendant and his agents knew that the written agreement did not conform to the intention of the parties and that they knew that he, Chastain, thought the written instrument did express the intention of the parties.

As a "*third affirmative and inconsistent defense*" (emphasis added) it is alleged (after incorporating paragraphs one and two of the first) that "'Exhibit A' (the contract) attached to the cross-complaint, is a true copy of the written instrument signed by cross-defendant, except that the instrument signed by cross-defendant does not have the figures and date appearing immediately to the right of the signature of 'A. W. Chastain,' and except that the instrument signed by cross-defendant contains the following:

"This instrument covers 1949 crop only. Herb Miller."

It is also alleged here that under the provisions of the written contract as signed, Belmont agreed to pay the sum of $1.00 per 3519 cubic inch field box for all fruit picked.

Belmont argues that for the sole and exclusive purpose of attempting to prove fraud, Chastain was permitted over objection to testify to conversations alleged to have taken place with Belmont's field agent prior to the execution of the agreement; that no express finding of fraud was made by the trial court; that if the findings as made are interpreted as a finding of fraud, then such findings are not supported by the evidence. It is contended that such parol evidence was improperly admitted inasmuch as there had been no allegations that the contract was ambiguous.

Plaintiff Chastain alleged that defendant Belmont's agent had represented to him that the contract expressed the oral agreement between them—that the $1.00 guarantee extended to all fruit picked and to each 3519 cubic inch field box. In this regard the pertinent provisions of the contract (and which are found in three different places therein) are: "This contract covers merchantable fruit only and the Shipper or his agent shall be the sole judge as to the merchantability of said fruit, and shall decide at the time of processing what shall be accepted as merchantable fruit. Since frozen fruit goes in by-products same is not accepted as merchantable." And "Shipper guarantees to Grower 1.00 per field box for 3,519 cu. Inch Box for all citrus fruit received and accepted as per contract for and during current season only." Another paragraph of the contract (heretofore quoted) provides that Shipper agrees to pay to the Grower the total amount received from the sale of the fruit "after deducting therefrom all sums of money (1) paid out or advanced . . . etc." Plaintiff alleges that he had been led to believe, because of representations made by defendant's agent, that these provisions meant that he was to receive $1.00 per field box of 3,519 cubic inches for all fruit taken by defendant. ■ Although a contract has been reduced to writing by the parties, parol evidence is admissible to show fraud, accident or mistake. (*Crawford* v. *France*, 219 Cal. 439, 442 [27 P.2d 645].) ■ Parol evidence is also admissible to aid in the interpretation of an ambiguous contract or writing (*California Emp. Stab. Com.* v. *Walters*, 64 Cal.App.2d 554, 559 [149 P.2d 17]). As the court said in *California Emp. Stab. Com.* v. *Walters, supra,* "[t]he very fact, however, that plaintiff questioned the meaning of certain words and clauses used in framing the agreement in itself shows that it was ambiguous. (*Body-Steffner Co.* v. *Flotill Products*, 63 Cal.App.2d 555 [147 P.2d

84].)'' The first paragraph above quoted could be construed as contended for by defendant and still be ambiguous inasmuch as the only expression as to what did not constitute merchantable fruit is the reference to frozen fruit. The second paragraph above quoted provides for a guarantee of $1.00 per box of all fruit received and accepted as *per contract*. Another provision of the contract provides that it covers ''the citrus fruit growing and to be grown on said grove on and after the date of this contract. . . .'' Still another provision of the contract provided that plaintiff was to receive the total amount received from the sale of the fruit after certain deductions had been made. ■ Fraud in the execution or inducement of a written contract may be shown, and revision of a written contract may be sought, where mistake or imperfection of the writing is put in issue by the pleadings. (*Alameda County Title Ins. Co.* v. *Panella*, 218 Cal. 510, 513 [24 P.2d 163].) ■ Plaintiff alleged that certain misrepresentations were made to him concerning the meaning of the contract he signed; that such representations were that the contract expressed the true intent of the parties. It would appear from the quoted portions that the contract was ambiguous on its face and that parol evidence was properly admitted in clarification thereof. In *Groover* v. *Belmont*, 114 Cal.App.2d 623, 625, 626 [250 P.2d 686], the court ordered the plaintiff to amend her answer to the cross-complaint in order to conform to proof. She then alleged in greater detail mistake, fraudulent representations and concealment on the part of defendant. The facts in that case were substantially similar to those involved here with the same question involved —whether defendant Frank Belmont had guaranteed a certain price (35 cents) for every field box or only for every field box of merchantable fruit with defendant the sole judge of merchantability. Defendant argued there, as here, that since there was no ambiguity, inconsistency or uncertainty in the contract parol evidence was not admissible. The court held ''The oral evidence was properly admitted here. The written contract was ambiguous in many respects and there was an obvious inconsistency between the provisions contained in the fine print and the provision written in longhand. The latter guaranteed 35 cents per field box to the grower for the fruit taken, while the former provided that the packer should pay the grower only what was left after deducting numerous charges, and after eliminating any fruit which the packer might prefer to consider as unmerchantable. Moreover, mis-

take, misrepresentation and fraud were alleged and the validity and nature of the agreement was the fact in dispute.'' In the case of *Groover* v. *Belmont, supra,* as hereinbefore noted, the court points out that there is an obvious inconsistency between the provision to pay a certain price per box and that which provides that Belmont shall pay to the grower (plaintiff here) only what was left after deducting numerous charges and eliminating any fruit which the packer might prefer to consider as unmerchantable.

It would appear from the foregoing that parol evidence was properly admitted under the allegation of fraud, and to clarify the patent ambiguity of the contract which was attached as an exhibit to the answer to the cross-complaint.

In answer to defendant's contention that the finding of the trial court concerning his alleged fraud was not supported by the evidence, it appears that Chastain's testimony, which has been set forth heretofore, amply supports the finding. This testimony, if believed, as it apparently was, was sufficient to support the finding. Miller, defendant's agent, testified in a manner which was called ''equivocal in a marked degree'' by the District Court of Appeal in referring to the testimony of one Ogilvie, defendant's agent involved in the case of *Groover* v. *Belmont, supra.*

Belmont next contends that there was not one word of testimony to support the trial court's finding that the contract was one of purchase and sale rather than of consignment. Chastain argues that the point is immaterial. Plaintiff, however, alleged in his answer to the cross-complaint (First Affirmative Defense) that defendant, through his agent ''requested of cross-defendant that he *sell* to cross-complainant his 1949 crop of oranges. . . .'' and that ''cross-complainant *paid* to cross-defendant the sum of $6,000.00 as *payment* for cross-defendant's crop of fruit estimated to be six thousand (6000) boxes. . . .'' In *Jackson* v. *Belmont,* 108 Cal.App.2d 288 [238 P.2d 1084], substantially the same contract as the one presently under consideration was involved. The court there said, quoting from *White* v. *Ardzrooni,* 71 Cal.App. 393, 400 [235 P. 461]: ''The writing itself provides for a minimum guaranteed price. If deductions were to be made from the guaranteed price, then that term in the written agreement would become practically meaningless. We think the true construction of the instrument and which carries out the intention of the parties to be that the defendants undertook to guarantee certain returns to the growers for the grapes to be

handled by them and were to be compensated out of whatever sums might be realized over and above such guaranteed prices. If this be not true, then the grower had no guaranteed price.'' In the present case, Chastain testified that Miller, defendant's agent, told him he would get $1.00 per box net with the understanding that if his fruit brought more than the $1.00 per box plus the charges for processing, etc., he would receive that amount in addition to the $1.00 guarantee. The check for $6,000 received by Chastain at the time of entering into the contract was marked ''Accommodation advance.'' In *Jackson* v. *Belmont, supra,* defendant's agent had made substantially the same representations to the plaintiff there. The court held that the word ''retain'' in reference to the minimum guarantee was absolutely foreign to the word ''consignment'' and that in the event the written part of a contract was inconsistent with the printed part, the written part should govern. In the written part there, as here, is found the provision for the guarantee of $1.00 per box for all fruit received and accepted. The court concluded that the contract was an agreement for sale and delivery and not one of consignment.

Belmont's next contention is that the three affirmative defenses cannot all be true, and that in finding them to be true the findings of the trial court are so inconsistent that a judgment based on them cannot stand. This argument is based on the fact that in the first two affirmative defenses, plaintiff alleges the false representations on the part of defendant's agent as heretofore set forth together with the fact that the contract was represented to plaintiff as containing the agreement which had been orally agreed upon, and the fact that the third affirmative defense (called by plaintiff an ''inconsistent defense'') alleges that ''Exhibit A attached to the cross-complaint, is a true copy of the written instrument signed by cross-defendant, except that the instrument signed by cross-defendant . . . contains the following: This instrument covers 1949 crop only. Herb Miller.''

 It appears to us that there is no inconsistency in these findings. Plaintiff could do nothing other than admit that the contract was the one he had signed. He does not admit that defendant's construction of the contract is the correct, or true, one, but alleges that he was led to believe that its *meaning* was as it had been represented to him. Defendant's position is that by this allegation plaintiff is alleging that the contract signed by him *conformed* to the oral agreement of

the parties. It is apparent from a reading of the allegation that no such interpretation can be placed thereon.

█ It is next contended by Belmont that the contract was in full effect for the 1950 crop, but that under the contract the guarantee did not extend to that crop. Belmont's argument that the contract covered the 1950 crop is threefold. He contends, first, that Chastain did not terminate the contract in the manner provided therein for its termination; and, secondly, that the contract provides that if the Grower fails to pay any balance due the Shipper within 10 days after notification of the amount due, "the term of this contract shall thereafter be further extended to cover succeeding seasons while Grower remains indebted to shipper"; and thirdly, that the contract specifically provides that the guarantee applies "for and during current season only."

The evidence shows that approximately 30 days after the 1949 fruit crop had been picked by Belmont, Chastain offered to settle up with Miller if the statement were ready; that in January, 1950, Chastain wrote Belmont a check for $1,034 (the difference between $1.00 per box for 4,966 boxes picked and the $6,000 advanced by Belmont) which was not accepted by Belmont and the trial court so found. The trial court found there was no written notice of termination during the last 10 days of November as provided for by the contract and this finding is supported by the evidence.

The trial court found that the copy of the contract retained by Chastain contained the words "This contract covers the year 1949 only. Herb Miller" but that the qualification had not been personally approved in writing by Frank Belmont (as required by the contract); that the contract was in full force and effect for the year 1950; that Chastain failed and refused to deliver the 1950 crop of oranges. It was found that the 1949 crop of oranges totaled 4,966 field boxes; that Belmont picked 1,226 field boxes of oranges from the 1950 crop; that plaintiff picked 2,049 boxes of the 1950 crop.

It was also found (Finding of Fact No. XVII) that the contract contained a provision for liquidated damages (which has been heretofore set forth) and that by reason of the nondelivery of 2,049 boxes of the 1950 crop, Belmont became entitled to 35 cents per field box for the undelivered oranges.

Finding No. XIX sums up the "true and correct statement of the account between the parties" as follows:

"Defendant and cross-complainant advanced to plaintiff

and cross-defendant the sum of $6,000.00. Plaintiff and cross-defendant is entitled to a credit for 4,966 field boxes of oranges picked in 1949 at $1.00 per field box under the guarantee provisions of said contract, leaving a balance of $1,034.00 owing at the end of the 1949 picking season. Defendant and cross-complainant is entitled to interest on said last mentioned sum at the rate of 7% per annum, to June 28, 1950, in the sum of $47.65. Defendant and cross-complainant is also entitled to a credit of 35¢ per field box on the 2,049 field boxes of oranges of the 1950 crop which plaintiff and cross-defendant withheld from defendant and cross-complainant, as liquidated damages under said contract, in the sum of $717.15. From this total of $1,798.80, plaintiff and cross-defendant is entitled to have deducted the sum of $1,226.00 for the 1,226 field boxes of oranges of the 1950 crop which defendant and cross-complainant picked, under the guarantee provisions of said contract leaving a balance of $572.80 owing, plus $47.99 interest to October 16, 1951, making a total of $620.70 [sic] due, owing and unpaid from plaintiff and cross-defendant to defendant and cross-complainant.''

Although Chastain prayed for reformation of the contract, the trial court did not purport to reform it. In this regard, it should be noted that plaintiff alleged that the proposed written contract was to cover the 1949 crop only. *The trial court found this to be true, but at the same time found the contract covered the 1950 crop.* Finding No. XXI provides, however, that all allegations inconsistent with the ''foregoing findings of fact are . . . untrue.''

The trial court found that a contract was entered into between the parties on August 4, 1949, and that the copy marked Exhibit ''A'' was a true copy except for certain exceptions (not material for this particular discussion). The trial court also found that the $1.00 guarantee extended to each and every field box of not only the 1949 crop of oranges, but that of 1950 although the contract specifically set forth that the guarantee applied to the current (1949) season only.

In this respect, it should be noted that plaintiff objects to the holding that the contract applied to the 1950 crop and to the award to defendant of 35 cents per box as liquidated damages for oranges picked by plaintiff during that season but has no complaint concerning the award to himself of the $1.00 guarantee per box for oranges picked by Belmont during that time.

Belmont concluded his cross-complaint with a prayer for

judgment in the sum of $5,297.60 plus 7 per cent interest per annum until paid and for judgment in the sum of $1,750 as liquidated damages and for costs. On appeal, he contends that to the balance of $4,367.99 "owed by Chastain to Belmont" there should be added the liquidated damages awarded to Belmont by the trial court in the sum of $717.15, "making a total of $5.085.14. And to that total there should be added interest on the sum of $4,367.99, at the rate of 7% per annum from April 30, 1951, to the date of the judgment."

The essence of the holding of the trial court is that the $1.00 per box covered every field box of fruit picked during the 1949 and 1950 seasons. In view of the parol evidence admitted to clarify the ambiguity in the contract, it would appear that the finding as to the 1949 crop was sustained by the evidence and that it was a proper interpretation of the contract. In view of the clear wording of the contract that the guarantee was to extend to the current crop only, we do not see how the guarantee could be said to cover the 1,226 boxes picked by Belmont in 1950.

### Chastain's Appeal

Plaintiff Chastain's position is that the contract did not cover the 1950 crop by reason of the limiting clause placed there by defendant's agent. The record shows that Miller, the agent, had not advised Belmont that he had so limited the coverage of the contract. It should also be noted that the record shows that the clause was placed there after Chastain had signed the contract on his own behalf and after Miller had signed it on behalf of Granada Packing House. The limiting sentence is signed by Miller only and not on behalf of the Granada Packing House or defendant Belmont. The contract also contains a provision that any changes, or additions, must be personally approved in writing by both the Grower and "Frank Belmont." It appears to us from the findings of fact that the trial court found the contract covered the 1950 fruit crop because this provision had not been complied with.

Chastain contends that the $1.00 guarantee should apply to every field box picked by Belmont during the 1949 season. He says that "The court's conclusion with reference to the continuing existence of the contract appears to be wrong." He argues that Belmont is chargeable with his agent's act in placing the 1949 limitation on the contract by reason of his ratification of the contract "as made." As we have heretofore

pointed out, the record shows that Belmont's copy of the contract did not contain the limiting clause and the agent testified that he had not informed Belmont that he had limited the coverage of the contract to the 1949 crop. Belmont's testimony on the subject was extremely equivocal and evasive as to whether or not he knew his agent had placed the limiting clause on the contract. ■ A principal must have knowledge of material facts at the time of the alleged ratification (Mechem Outlines Agency, § 136) in order to be held liable for the unauthorized act of another.

Chastain contends that Belmont cannot bring himself within the exception contained in section 1671 of the Civil Code ("The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage") because the difficulty in determining the actual damage was caused by Belmont. In this regard it should be noted that the trial court found "that such impracticability and difficulty [in fixing damages] results from the insufficiency of the books and records kept by the said Belmont and *from no other reason.*" (Emphasis added.) This finding appears to be amply sustained by the evidence. ■ Chastain argues correctly that the person relying on a liquidated damage provision has the burden of pleading and proving that *when the contract was entered into,* the fixing of damages was impracticable or extremely difficult. Inasmuch as the time the contract is entered into is the material time so far as the validity of a provision for liquidated damages is concerned, the finding of the trial court would appear to be of no importance. Belmont alleged, in his cross-complaint, that at the time the contract was entered into it was impracticable and extremely difficult to fix damages in the event of the breach of such a contract, and his testimony, while vague and incoherent, *could* be said to bear out his allegations. The trial court found, in addition to the finding hereinbefore set forth, "[t]hat at all times it was and now is impracticable and extremely difficult to fix the amount of damage or loss. . . ." Chastain argues, of course, that the amount fixed amounted to a penalty, rather than a provision for liquidated damages.

Chastain's final argument is that the judgment should be modified by deducting therefrom the sum of $717.15 (the amount allowed, with interest, as liquidated damages) and

that his, Chastain's, net judgment would therefore be the sum of $96.45 and that Belmont should not recover costs.

It appears that the judgment must be reversed because of the lack of evidence to support the finding and conclusion that the guarantee of $1.00 per box extended to the 1950 crop of oranges.

We have concluded that inasmuch as the $1.00 per box guarantee did not extend to, and cover, the 1950 crop of oranges, the judgment must be reversed insofar as it holds that Chastain is entitled to recover from Belmont $1.00 per box for the oranges picked by Belmont from Chastain's 1950 crop. The trial court is directed to determine the sole issue of the reasonable market value of the boxes of oranges picked by Belmont from Chastain's 1950 crop and offset the amount so determined against the amounts heretofore determined to be owing from Chastain to Belmont and enter judgment accordingly. Each party to bear his own costs on this appeal.

Shenk, Acting C. J., Schauer, J., Spence, J., and Bray, J. pro tem.,* concurred.

Edmonds, J., concurred in the judgment.

A petition by appellant Belmont for a rehearing was denied July 7, 1954.

---

*Assigned by Chairman of Judicial Council.